OPINION
Plaintiffs-appellants, Antonio W. Campagna, Joanne Campagna, Joseph Campagna, Zeb Campagna, Christian Campagna, and Nicole Campagna, appeal from a decision of the Franklin County Court of Common Pleas granting the summary judgment motion of defendants-appellees, Clark Grave Vault Company and CTL Steel.
Appellants filed a complaint on May 4, 1999, alleging damages based on appellees' negligence in failing to provide a safe place for Antonio Campagna ("Campagna") to secure his load of steel and for negligent hiring, supervision and training of employee, William Fraker. Appellees filed an answer denying liability. After discovery, appellees filed a motion for summary judgment. The trial court granted appellees' motion, finding no factual basis to support a duty owed to Campagna. Additionally, the trial court held that, even assuming a duty, appellants could not show a breach of such duty. Appellants filed a timely notice of appeal.
On appeal, appellants assert four assignments of error:
ASSIGNMENT OF ERROR 1:
 THE COMMON PLEAS COURT OF FRANKLIN COUNTY, OHIO ERRED IN AWARDING SUMMARY JUDGMENT TO THE APPELLEES BASED ON A FINDING OF NO DUTY OWED TO MR. CAMPAGNA BY APPELLEES.
ASSIGNMENT OF ERROR 2:
 THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY, OHIO ERRED IN FINDING THAT CTL STEEL COMPANY DID NOT BREACH ITS DUTY OF CARE WHEN IT REQUIRED MR. CAMPAGNA TO SECURE HIS LOAD IN A MANNER THAT THEY KNEW TO BE UNSAFE.
ASSIGNMENT OF ERROR 3:
 THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY, OHIO ERRED IN FINDING THAT CTL'S BREACH OF DUTY TO MR. CAMPAGNA DID NOT PROXIMATELY CAUSE HIS INJURIES.
ASSIGNMENT OF ERROR 4:
 THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY, OHIO ERRED IN GRANTING SUMMARY JUDGMENT ON CLAIMS OF NUISANCE AND NEGLIGENT HIRING, TRAINING, AND SUPERVISION.
On May 5, 1997, Campagna, a truck driver for MacRan Corporation, acquired a load of steel plates from appellees' premises in Columbus, Ohio, for the purpose of transporting the steel for his employer. Although Campagna had visited appellees' premise on one prior occasion, he never approached the loading bay area or the east lot. Upon completion of the loading of steel by William Fraker, appellees' shipping operator, Campagna began to secure the load with straps and a winching system located on the driver's side of the truck. Fraker does not explicitly recall meeting with Campagna; however, he confirmed the meeting by various documents created by appellees, which verify that Fraker was the shipping operator on the day and time Campagna was present at appellees' place of business.
Shortly after, but before Campagna could secure his load, Fraker asked Campagna to "secure and tarp" his load of steel in the east lot, outside of the loading bay area, in order to permit other trucks to enter the bays. Fraker acknowledged that the general practice of appellees is to ask drivers to "secure and tarp" outside in the east lot when other drivers are awaiting access to the loading bays. Fraker also attested that no drivers are ordered or forced to do so. Campagna proceeded to the east lot to "secure and tarp" his load as directed.
A few minutes later, Fraker directed Campagna to move his truck close to a barbwire fence to allow a truck in the loading bay to exit. Because of Campagna's close proximity to the fence, he was unable to secure the load of steel with straps and winches. Campagna did not inform appellees of this problem, but, instead, chose to use chains located beneath the truck to secure the load. The use of chains required Campagna to crawl on top of the truck to secure the chains around the loads of steel with ratchet binders, snaps binders and breaker bars, which require pressure to lock in place. Campagna was not provided with a ladder or platform. He asserts that, while placing the last breaker bar in place to secure the load, the bar "turned over on me and shot me into the ditch." Campagna is not sure as to what exactly caused his fall, stating that "it could be a combination of things at one time, the breaker bar turning over, me pushing hard, losing my footing." Campagna informed Fraker of his fall, yet stated he was unsure of the extent of his injuries. Campagna did not request any assistance or medical treatment. After the fall, he spent an hour securing the last breaker bar. He was wearing slip resistant steel toe boots at the time of the incident. Furthermore, he has over twenty years experience in the truck driving and delivery industry.
Approximately ninety minutes after the fall, Campagna drove to a truck stop to call his dispatcher. At such time, he realized he was unable to physically move from the truck. Another truck driver, who heard Campagna on the CB, contacted the state police who, in turn, dispatched an ambulance. Campagna's immediate injuries included abrasions, hip and neck injuries. He later suffered from facial spasms, right knee problems, a herniated neck disk, dental problems, sexual dysfunction, depression and psychological problems. He was classified as disabled by workers' compensation. Workers' compensation paid approximately $400,000 in medical bills and expenses, including a $115,000 lump sum settlement to Campagna.
When reviewing a trial court's summary judgment decision, an appellate court conducts a de novo review. Village of Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. In applying the de novo standard, we review the trial court's decision independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. Of Commrs. (1993), 87 Ohio App.3d 704, 711. In accordance with Civ.R. 56(C), the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Summary judgment is a procedural device to terminate litigation, thus it must be awarded cautiously with any doubts resolved in favor of the non-moving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,358-359. A non-moving party cannot rest upon the allegations of the pleadings but must respond with affidavits or similar evidentiary materials demonstrating that a genuine issue of material fact exists for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, citing Civ.R. 53(E). In Dresher, the Ohio Supreme Court held that:
 * * * [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claim. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. [Emphasis sic.] [Id.]
In appellants' first assignment of error, they assert that the trial court erred in awarding summary judgment to appellees based on a finding of no duty owed to Campagna. We agree.
Appellants argue that appellees owed a duty of care to Campagna because a special relationship existed. The law imposes an affirmative duty on persons to act for the benefit of another when an obligation to act reasonably arises from the relationship between them. Rinehart v. Fed. Natl. Mtge. Assn. (1993), 91 Ohio App.3d 222, 228. An affirmative duty to act for the protection of others may arise where there exists a special and definite relationship between the parties. Jackson v. Forest City Ent., Inc. (1996), 111 Ohio App.3d 283, 285. Relationships that result in a duty to protect others include possessor of land and invitee. Id.
Here, Campagna was clearly a business invitee. A business invitee is one who, by invitation, whether expressed or implied, comes upon the premises of another for some purpose that is beneficial to the business owner. Light v. Ohio University (1986), 28 Ohio St.3d 66, 68. Being a business owner, appellees have a duty of ordinary care to maintain the premises in a reasonably safe condition. Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203. This duty of care requires a business owner to warn invitees of latent and concealed defects. Davenport v. M/I Schottenstein Homes, Inc. (1993), 96 Ohio App.3d 237, 240.
Additionally, the existence of a duty depends on the foreseeability of the injury suffered by Campagna. Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77. The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. Id. The foreseeability of the harm depends on the defendant's knowledge. Id. Injury is foreseeable if appellees knew or should have known that its act was likely to result in harm to someone. Bohme, Inc. v. Sprint Internatl. Communications Corp. (1996), 115 Ohio App.3d 723,728. It is not necessary that appellees foresee the injury in the precise form in which it occurred. Id. Appellants do not need to show that appellees had knowledge or notice of the condition at issue when appellees create the hazardous condition. Id. One who creates the condition is presumed to know what it created. Id.
Appellees are owners of a business that invites customers upon its premises for the purpose of transporting steel, whether pick up or delivery. Campagna's employer, MacRan, previously scheduled the pick up of steel plates with appellees as part of appellees' normal business procedure. Appellees were well aware of Campagna's expected visit to retain steel plates. Thus, Campagna was a business invitee, and appellees had an obligation to act for the benefit of Campagna because of the nature of their relationship.
The loading and unloading of steel is performed in loading bay areas that are supplied with platforms to allow employees to load trucks without risking injury by having to climb on top of a load of steel that may be as high as four feet. Appellees require truck drivers to secure and tarp their loads before leaving the premises. Appellees possess knowledge of the skill and safety required to load and unload steel and maintain ladders and platforms to assist and protect individuals during the loading and unloading process. Thus, appellees had knowledge of the possible harm to truck drivers while "securing and tarping" their loads. Because of this knowledge, it was foreseeable that Campagna could injure himself in securing the load in the east lot without the use of a ladder or a platform. Thus, we disagree with appellees' argument that Campagna's accident was completely unforeseeable.
Furthermore, it is not necessary that appellees have actual knowledge of a defective condition as a predicate for its duty of care when appellees created the hazardous condition. Bohme, at 730. Although not a written procedure, it is part of the normal course of business for appellees to request that truck drivers "secure and tarp" outside of the loading bay area. Moreover, appellees have control over the condition of the east lot. Thus, appellees created the condition in the east lot and are presumed to know of the dangers they created.
Appellees further argue that the circumstances relating to Campagna's fall were the sole and proximate result of his independent and volitional acts, arguing that it is the driver's independent responsibility to secure his load for interstate transport, drivers are not ordered or mandated to "secure and tarp" in the east lot, and that Campagna never complained of the condition of the east lot. It is undisputed that Campagna proceeded to "secure and tarp" without complaining to appellees about the condition of the east lot. However, the doctrine of "implied assumption of risk" requires Campagna's conduct to be compared with the conduct of appellees. Smith v. Cincinnati Gas Elec. Co. (1991),75 Ohio App.3d 567, 571. Despite Campagna's assumption of the risk, genuine issues of material fact exist as to whether appellees breached their duty by failing to provide a safe location for Campagna to "secure and tarp" his load of steel. Id. Disputes as to both the conduct of the parties and the standard of care are questions for the jury. Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 288. The presence of affirmative defenses, such as comparative negligence, is a question of fact that should be preserved for the jury. Simmers v. Bentley Constr. Co. (1992), 64 Ohio St.3d 642, 646. Because this is a motion for summary judgment against appellants, appellants are entitled to have the evidence construed most strongly in their favor. Construing the evidence strongly in the favor of appellants, a genuine issue of material fact exists because reasonable minds can reach different conclusions. Thus, the trial court erred by awarding summary judgment to appellees. Appellants' first assignment of error is sustained.
In appellants' second assignment of error, they assert that the trial court erred in finding that appellees did not breach their duty of care. We agree.
The issue of whether the duty was breached is a question of fact. Smith, at 569. The trial court held that, because Campagna's actions were of his own volition, independent and unrelated to any conduct by appellees, appellants cannot show a breach of duty. Appellants claim the breaker bar overturned while applying the necessary pressure for the bar to lock to secure the load. Appellees claim Campagna's fall was of an "accidental" nature. Because we found above that appellees owed a duty to Campagna, the trial court erred in granting summary judgment to appellees while genuine issues of material fact remain to be litigated.
Appellees further argue that there is no evidence that they created or maintained a known nuisance or hazardous condition. They further argue that: (1) appellant did not complain that the conditions were unsafe or inadequate; (2) they had no knowledge of any other accidents or injuries involving drivers who were unable to "secure and tarp" their loads in the east lot; (3) there have been no complaints from other truck drivers with regard to "securing and tarping" in the east lot; and (4) most drivers prefer to backup along the metal fence to "secure and tarp" their loads of steel as opposed to utilizing appellees' loading bays and platforms. However, this does not negate appellees' creation of a hazardous condition that may have caused Campagna's fall. In Tandy v. St. Anthony Hospital (Nov. 29, 1988), Franklin App. No. 88AP-551, unreported, this court held that a defendant's lack of notice of the existence of a hazardous condition was not determinative of a defendant's negligence; instead, this court focused on the defendant's creation of the hazard. Id. Evidence that no complaints have been received does not negate the creation of a dangerous condition that caused injuries. Id. Thus, this court concluded that the plaintiff need not show that the defendant had actual or constructive notice of the hazardous condition. Id.
Within the east lot are old oil barrels, pallets, a fire hydrant, a standpipe surrounded by steel beams and other encumbrances. The standpipe beams are damaged, suggesting that trucks have likely hit them on several occasions while maneuvering through the lot. In addition, the east lot is not large enough for trucks to turn around. The lot was unpaved, dented and unlevel at the time of Campagna's accident. Furthermore, there are no platforms, ladders or other protective devices to assist truck drivers in "securing and tarping" their loads, as required by appellees before leaving the premises. Yet appellees' standard practice is to send truck drivers to the east lot to "secure and tarp" their loads, despite appellees' Safety Director, Ronald K. Tutorow, admitting that such practice is not safe for the truck drivers. Considering the condition of the east lot and the task of "securing and tarping," appellees created a hazardous condition by requesting drivers to "secure and tarp" in the east lot when a safe method was available in the loading bay area. Furthermore, because notice is not required, it is irrelevant that other drivers did not complain, that some drivers prefer to "secure and tarp" in the east lot and that appellees lacked knowledge of other accidents in the lot.
In maintaining that appellants failed to set forth specific facts showing that there were no genuine issues of material fact for trial, appellees argue that the affidavit of Douglas Ruth, appellants' expert witness, is insufficient for consideration according to Evid.R. 702 because it is opinion testimony. Appellees argue that Ruth failed to provide scientific or technical basis for his conjecture and that his testimony did not relate to matters beyond the knowledge or experience possessed among laypersons.
Evid.R. 702(A) and (C) provide that a witness may testify as an expert if:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
* * *
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *
Appellees have failed to complete their analysis of expert testimony by providing only a partial interpretation of Evid.R. 702. The Ohio Rules of Evidence require that Evid.R. 702 is read in conjunction with Evid.R. 703, which specifies the bases for expert testimony, and Evid.R. 705, which governs the disclosure of the facts upon which the opinion is based. See, e.g., Giannelli Snyder, Rules of Evidence Handbook (2000) 237. Evid.R. 705 provides that an expert may testify in terms of opinion or inference and give his reasons therefore after disclosure of the underlying facts or data. The expert is not required to be the best witness on the subject, but the expert testimony must assist jurors in their search for the truth. Azzano v. O'Malley-Clements (1998),126 Ohio App.3d 368, 374. The expert must demonstrate some knowledge on the particular subject superior to that possessed by an ordinary juror. Id. at 373. When an issue is within the experience, knowledge and comprehension of the jury, the expert testimony on that issue is unnecessary and inadmissible because it is of no assistance to the jury. Id. When an expert bases his opinion on facts he perceived or data admitted in evidence at the hearing and the facts or data are identified before the opinion is offered, Evid.R. 703 and 705 are satisfied. Smith, at 570-571.
Here, the expert testimony is admissible because it meets the requirements of Evid.R. 702, 703 and 705. Ruth based his opinion on his personal observations of the east lot, photographs and measurements. Ruth attested that Campagna was placed in a position that left him without adequate room to maneuver around his truck in a manner that would be necessary for him to safely secure the load of steel. Ruth further attested that requiring Campagna to crawl on top of a truck on an unlevel surface significantly increased the risk that he would be injured by the use of breaker bars. The ordinary layperson does not have experience or knowledge relating to "securing and tarping" loads of steel. In addition, Ruth's testimony is relevant to whether a dangerous condition existed at the time and place of Campagna's fall. Furthermore, Ruth's testimony is based upon his personal observations of information relating to Campagna's fall. An opinion based upon observation and experience is relevant opinion testimony. Johnson v. Wendy's Internatl., Inc. (1993),90 Ohio App.3d 100, 103. Expert testimony may be used to assist appellants in identifying the reason for the fall. Sadey v. Metromedia Steakhouses Co. (July 15, 1999), Cuyahoga App. No. 74178, unreported. Ruth's expert testimony is admissible because he bases his testimony on information he received and his personal observations of the east lot, and his testimony relates to matters beyond the knowledge or experience possessed by laypersons. Thus, the trial court erred by granting appellees' summary judgment motion. Appellants' second assignment of error is sustained.
In appellants' third assignment of error, they assert that the trial court erred in finding that appellees' breach of duty did not proximately cause Campagna's injuries. We agree.
The rule of proximate cause requires that the injury sustained be the natural and probable consequence of the alleged negligent act. Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 143. In addition, the injuries sustained should have been foreseen or anticipated by the wrongdoer to likely follow his negligent act. Id. A person who is injured from a fall is not necessarily precluded from asserting a successful negligence claim simply because he cannot remember the exact cause of his fall. Johnson, at 104. Appellants do not have the burden of proving beyond a reasonable doubt what caused the fall. Id. Appellants only need to offer sufficient evidence to demonstrate that it is more probable than not that Campagna's fall was caused by appellees' dangerous condition. Id.
The trial court never reached the issue of proximate cause because it found no duty owed to Campagna. Appellees argue that no proximate cause exists because Campagna's fall was unforeseeable and the sole and proximate result of his own independent and volitional acts. Appellants argue that Campagna's fall was most probably caused by the non-level ground in the east lot, in addition to the requirement to get on top of his trailer to secure his load by use of breaker bars. Ruth, appellants' expert witness, attested that, in all probability, Campagna lost his balance due to the unlevel ground in the east lot and that his injuries were likely the result of the hazards contained in the east lot. Thus, there is a genuine issue of material fact that appellees' breach of duty was the proximate cause of Campagna's injuries. Appellants' third assignment of error is sustained.
In appellant's fourth assignment of error, they assert that the trial court erred in granting summary judgment on claims of nuisance and negligent hiring, training and supervision. We agree.
Upon a review of the record, we find appellees failed to meet their burden of proof to obtain summary judgment on these issues. As noted above:
 * * * The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. * * * [Emphasis sic.] [Dresher, at 293.]
The party seeking summary judgment always bears the initial burden of informing the trial court of the basis for the motion. Vahila v. Hall (1997), 77 Ohio St.3d 421, 430. The moving party must demonstrate that no genuine issue of material fact exists by identifying portions of the record that support its claim. Id. at 429 430. The moving party must specifically delineate its reasons for requesting summary judgment to afford the non-moving party an appropriate opportunity to respond. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. "Then, and only then, is the initial burden discharged." Vahila, at 430. If the moving party fails to satisfy its initial burden, the summary judgment motion must be denied. Id. at 429.
In their motion for summary judgment, appellees argued that appellants' lack of evidentiary support for their claim of negligence defeats their related claims of nuisance and negligent hiring, training and supervision. Appellants argue that appellees failed to address the issues relating to nuisance and negligent hiring, training and supervision. In the motion for summary judgment, appellees only briefly addressed the issues in a footnote stating:
 * * * [T]he dearth of evidentiary support for such a claim, negates the viability of the related claims such as nuisance, respondeat superior, and negligent hiring/supervision[.] * * *
The trial court also only addressed the issues in passing, stating:
 * * * Plaintiffs have failed to provide any evidence to support their claim for negligence and the related claims. * * *
Appellees failed to address appellants' claims on appeal, except again in a footnote.
Appellees' conclusory assertion that appellants have no evidence to prove their case is not sufficient to discharge their initial burden to provide specific evidence to demonstrate that appellants are unable to prove their claims. Because appellees failed to meet their initial burden, the trial court erred in granting the summary judgment motion. Thus, appellants' fourth assignment of error is sustained.
Because there remain genuine issues of material fact, the trial court erred to the prejudice of appellants in granting appellees' summary judgment motion. Thus, appellants' four assignments of error are sustained, and the judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.
 ___________________ KENNEDY, J.
LAZARUS and BROWN, JJ., concur.