SLAGLE et al., Appellants,

v.

WHITE CASTLE SYSTEMS, INC., Appellee.

[Cite as *Slagle v. White Castle Systems, Inc.* (1992), 79 Ohio App.3d 210.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–889.

Decided April 9, 1992.

*DeLibera, Lyons, Moore & Colley, John S. DeLibera* and *David A. Colley,* for appellants.

*Porter, Wright, Morris & Arthur, Terrance M. Miller* and *Scott E. North,* for appellee.

PETREE, Judge.

Plaintiffs, James and Susan Slagle, appeal from a summary judgment granted in favor of defendant, White Castle Systems, Inc. Plaintiffs brought this action on behalf of their minor son, Ty Slagle, after Ty was criminally assaulted on his way home from working the night shift at defendant's restaurant. The trial court ruled that defendant was immune from suit under the Ohio Workers' Compensation Act because Ty's injuries were sustained in the course of his employment. Although we hold that plaintiffs' claims are not barred by the Ohio's workers' compensation law, the judgment will be

affirmed because plaintiffs are unable to show that defendant assumed a duty to protect Ty from the criminal acts of third persons occurring off its business premises.

Ty Slagle was sixteen years of age when he applied for a job at a nearby White Castle restaurant. In addition to working weekday afternoons, Ty planned to work the night shift, 11:00 p.m. to 7:00 a.m., on Fridays and Saturdays. Concerned with their son's safety, Ty's parents discussed his proposed working hours with Marge Whittaker, a White Castle supervisor. During that conversation, Whittaker allegedly assured them that Ty would not be allowed to leave the restaurant during the night shift. With this understanding, Ty began working at White Castle in October 1986. Although he usually walked to work for his afternoon shifts, his parents arranged transportation for the night shifts. On January 10, 1987, Ty was scheduled to work from 11:00 p.m. to 7:00 a.m. Several hours into the shift, Ty began to feel ill. At 3:15 a.m., he received the manager's permission to leave work early. Although he was offered a ride by several co-workers, Ty chose to walk home instead. Several blocks from the restaurant, Ty was robbed and assaulted by unknown assailants.

Plaintiffs filed this action on May 10, 1988 alleging that defendant was liable for the injuries Ty sustained in the criminal assault. Liberally construed, plaintiffs' amended complaint set forth eight separate causes of action sounding in tort and contract. Five of the eight claims were based on a variety of negligence theories. Essentially, plaintiffs alleged that defendant negligently allowed Ty to walk home late at night despite the risk that he might be criminally attacked.

On defendant's motion, the trial court granted summary judgment on each of the five negligence claims. Relying on the special hazard rule announced in *Littlefield v. Pillsbury Co.* (1983), 6 Ohio St.3d 389, 6 OBR 439, 453 N.E.2d 570, the court held that Ty's injuries were sustained in the course of, and arising out of, his employment and that defendant was therefore immune from all liability for these injuries. The court, however, denied defendant's motion as to the remaining three claims which were brought under contract and intentional tort theories. Following this judgment, plaintiffs dismissed the contract and intentional tort claims and filed this timely appeal, asserting a single assignment of error:

"The trial court erred in granting summary judgment in favor of the defendant-appellee and against the plaintiffs-appellants as the defendant-appellee was not entitled to judgment as a matter of law."

Under R.C. 4123.74, employers who comply with the Workers' Compensation Act are immune from damages for any injury sustained by an employee

in the course of and arising out of the employment relationship. Likewise, an injury is compensable under R.C. 4123.54 if it is "received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C); *Bralley v. Daugherty* (1980), 61 Ohio St.2d 302, 303, 15 O.O.3d 359, 360, 401 N.E.2d 448, 449. Thus, the tests for compensability and immunity are the same. If an unintentional injury is compensable under the Workers' Compensation Act, then the employer will be immune from any suit claiming damages for that injury.

The requirement that a compensable injury be received in the course of, and arising out of, the injured employee's employment is a conjunctive one. *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 277, 551 N.E.2d 1271, 1273. Each of the two elements must be satisfied before a claim will be allowed. As defendant points out, the latter element is satisfied in this case by the very nature of plaintiffs' claims. An injury arises out of the employment when there is a causal connection between the injury and the employment. *Id.; Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96. A causal connection between the injury and defendant's alleged breach of duty is also an essential element of any negligence claim. Because causation is an element essential to both compensability and negligence, proof sufficient for one purpose must necessarily establish the other.

■ To be compensable under the Workers' Compensation Act, an injury which arises out of the employment must also be sustained during the course of employment. This element refers to the time, place and circumstances of the injury. *Fisher, supra*, 49 Ohio St.3d at 277, 551 N.E.2d at 1273. For employees with a fixed and limited place of employment, the course of employment is typically restricted to activities occurring on the employer's premises or within the immediately adjacent "zone of employment." Injuries occurring on the employer's premises are generally sustained in the course of employment. But injuries sustained while traveling to and from a fixed place of employment are not generally compensable because time spent commuting is considered a private activity, not one undertaken in the service of the employer. *Bralley, supra*, 61 Ohio St.2d at 303, 15 O.O.3d at 360, 401 N.E.2d at 449; *Lohnes v. Young* (1963), 175 Ohio St. 291, 25 O.O.2d 136, 194 N.E.2d 428.

■ Recognizing that Ty's injuries were not compensable under the general rule, the trial court relied on an exception to that rule fashioned by the Supreme Court in *Littlefield, supra*. In that case, the court held that an injury sustained while commuting to and from a fixed place of employment was compensable if the employment created a special hazard or risk. "The special hazard rule applies where: (1) 'but for' the employment, the employee

would not have been at the location where the injury occurred, and (2) the risk is distinctive in nature or quantitatively greater than the risk common to the public." *Id.* at paragraph two of the syllabus. In *Littlefield,* the Supreme Court held that the risk of making a left turn from a busy street into the employer's plant was a special hazard under this rule. However, in a more recent case, the Supreme Court has retreated somewhat from the broad rule announced in *Littlefield.* In *MTD Products, Inc. v. Robatin* (1991), 61 Ohio St.3d 66, 572 N.E.2d 661, the court was confronted with a set of facts indistinguishable from those in *Littlefield.* Nevertheless, the court held that these facts did not establish a special hazard because the risk encountered in making a left turn on a busy street is no greater than the risk encountered by the general public. Concluding that *Littlefield* was an incorrect application of the law to the facts of the case, the court overruled *Littlefield* to the extent that it conflicted with the *Robatin* opinion.

 Although the special hazard rule apparently survived the court's later opinion in *Robatin,* we think that the trial court incorrectly applied the rule to the facts of this case. The applicability of the special hazard rule typically turns on the second prong—whether the risk is distinctive in nature or quantitatively greater than the risk encountered by the general public. The risk of criminal assault on a public street, like the risk of traffic accidents, is shared equally by all citizens. Even before *Robatin,* we held that risks occurring late at night are not quantitatively different from those encountered by the general public. *Kunze v. Columbus Police Dept.* (1991), 74 Ohio App.3d 742, 600 N.E.2d 697; *Hill v. Gen. Metal Heat Treating, Inc.* (1988), 47 Ohio App.3d 72, 75, 547 N.E.2d 405, 408. The same may be said for "high-crime areas." These are risks encountered by the public at large, not work risks distinctive to a given employment.

The trial court held that the risk of criminal assault was quantitatively greater for Ty than for the general public due to Ty's status as a minor. Even if we were to accept this somewhat doubtful proposition as true, the trial court's approach improperly shifts the focus from the nature of the risk to the characteristics of the person injured. A special hazard under *Littlefield* and *Robatin* is a work-related condition or risk which is distinctive in nature or quantitatively greater than the risks common to the general public. The existence of such a risk does not depend upon the individual characteristics of the employee injured. It depends, instead, upon the nature of the risk or condition and whether that risk is greater for employees than it is for members of the general public. Ty's minority at the time in question has no impact upon this analysis. Because White Castle employees are no more susceptible to criminal assault than members of the general public walking

down the same street, the special hazard rule does not apply. As Ty's injury was not sustained in the course of employment, the injury is not compensable and defendant is not entitled to immunity under R.C. 4123.74.

█ . Although the trial court incorrectly ruled that defendant was immune from liability under the Ohio Workers' Compensation Act, we must affirm its judgment if it reached the right result, but for the wrong reasons. *McCormick v. Haley* (1973), 37 Ohio App.2d 73, 77, 66 O.O.2d 132, 134, 307 N.E.2d 34, 37. The existence of a duty owed by the defendant to the plaintiff is an essential element of any negligence action. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469. While the scope and extent of the duty owed is ultimately a question of fact, the existence of such a duty is, in the first instance, a question of law for the court. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 269.

█ Many courts have recognized that there is no general duty to protect others from the criminal conduct of third persons absent some special relationship or circumstance. *E.g., Morton v. Prescott* (Ala.1990), 564 So.2d 913, 915; *Hopkinson v. Chicago Transit Auth.* (1991), 211 Ill.App.3d 825, 837, 156 Ill.Dec. 240, 248, 570 N.E.2d 716, 724; *Bell & Hudson, P.C. v. Buhl Realty Co.* (1990), 185 Mich.App. 714, 462 N.W.2d 851, 853. This rule is consistent with Ohio law. Ordinarily, one has no duty to act affirmatively for the protection of others. The mere fact that harm to another is a foreseeable consequence of one's failure to act does not, in and of itself, impose a duty to take such action. 2 Restatement of the Law 2d, Torts (1965) 116, at Section 314 (adopted in *Gelbman v. Second Natl. Bank of Warren* [1984], 9 Ohio St.3d 77, 79, 9 OBR 280, 281, 458 N.E.2d 1262, 1263). A duty to act affirmatively for the protection of others may arise where there is a special and definite relationship between the parties such that the law will impose a duty to act. *Clements v. Heston* (1985), 20 Ohio App.3d 132, 135–136, 20 OBR 166, 168–170, 485 N.E.2d 287, 290–292. Alternatively, such a duty may also be imposed by statute. *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776. In this appeal, plaintiffs rely on both theories to establish a duty owed by defendant under the facts of this case.

█ Among the relationships which will give rise to a duty to protect others are those between a common carrier and a passenger, an innkeeper and a guest, and a landowner and persons invited upon the land. Restatement, *supra*, at Section 314A. Undoubtedly, the relationship between an employer and an employee may also give rise to such a duty. *Id.* at 122, Section 314B. However, that duty does not extend beyond the employment relationship. Ordinarily, an employer has no duty to protect its employees from injuries which occur while traveling to and from work. See *Howard v. Delco Div. of*

*Gen. Motors Corp.* (1987), 41 Ohio App.3d 145, 534 N.E.2d 936. Because Ty's injuries were sustained outside the course of his employment, defendant had no duty to protect Ty based merely upon its status as Ty's employer.

Plaintiffs maintain that defendant owed an additional duty above and beyond its duties as an employer by accepting custody of a minor child. Indeed, Section 314A(4), of the Restatement of the Law 2d, Torts, recognizes that one who voluntarily takes custody of another is under a duty to protect the other against unreasonable risks of harm. When a person accepts custody of a child, that person stands *in loco parentis* to the child, accepting all the rights and responsibilities that go with that status. As it involves the ultimate physical and legal control of another, a custodial relationship is not entered into lightly. One who accepts custody of a child must voluntarily assume the duties and responsibilities of a parent towards that child. This is far beyond the degree of control and supervision typically exercised by an employer over a minor employee. To establish a custodial relationship between an employer and a minor employee, there must be proof that the employer voluntarily assumed the additional responsibilities of a custodian towards the child.

Plaintiffs also maintain that defendant may be found negligent *per se* based upon the breach of several statutorily imposed duties. Where a statute or city ordinance imposes upon any person a specific duty for the protection of others and the breach of that duty proximately causes injury to another, that person may be found negligent *per se* based upon the violation of the statutory duty. *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph two of the syllabus. Of the five statutory sections cited by plaintiffs in their amended complaint, three might arguably provide a basis for negligence *per se*. R.C. 2919.22(A) and Columbus City Code Section 2321.05 are criminal statutes which apply to persons having custody of children under eighteen years of age who create a substantial risk to the child's health or safety by violating a duty of care, protection or support. The third statute, Columbus City Code Section 2321.03, applies to parents or guardians having legal custody of a minor who negligently allow the minor to violate the city curfew. The doctrine of negligence *per se* applies only where there is a violation of a legislative enactment by one required to obey it. *Id.* at paragraph three of the syllabus. As each of the three code sections relied upon by plaintiffs apply only to parents or custodians of minor children, proof that defendant assumed custody of Ty is an essential element of plaintiffs' negligence *per se* claims.

Summary judgment should be granted where there are no genuine issues of material fact, the moving party is entitled to judgment as a matter

of law, and reasonable minds can come to but one conclusion, which conclusion is adverse to the non-moving party. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273. The party seeking summary judgment bears the initial responsibility of identifying those elements of the opponent's case which raise no genuine issues of material fact and upon which the moving party is entitled to judgment as a matter of law. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Once the moving party satisfies this burden, the party opposing the motion has an affirmative duty to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (citing *Celotex Corp. v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265). When reviewing a summary judgment, we apply the same standard as that employed by the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199. Construing the evidence most strongly in favor of the non-moving party, summary judgment will be granted where that party fails to make a showing sufficient to establish the existence of an element essential to that party's case and upon which it will bear the burden of production at trial. *Celotex, supra,* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

█ Proof that defendant voluntarily assumed custody of Ty is an essential element of plaintiffs' negligence claims. Here, plaintiffs have failed to produce any evidence which might convince reasonable minds that defendant assumed custody of their son. Whittaker's alleged promise that Ty would be "locked in" all night is simply insufficient to establish the requisite custodial relationship. Even construed most strongly for plaintiffs, it does not imply the assumption of a duty to protect Ty from a criminal assault committed by third parties off its business premises. As proof that defendant voluntarily assumed such a duty is an essential element of plaintiffs' claims, defendant is entitled to judgment as a matter of law.

Plaintiffs' assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

McCORMAC, J., concurs.

TYACK, J., dissents.

TYACK, Judge, dissenting.

While I agree with much of what is set forth above, I differ with my colleagues on a few particulars which lead me to a different result. Specifi-

cally, the majority opinion seems to turn upon the statement " * * * the judgment will be affirmed because plaintiffs are unable to show that defendant assumed a duty to protect Ty from the criminal acts of third persons occurring off its business premises."

To the extent that negligence is being pursued as a theory of liability, the applicable duty is not a "duty to protect" but a duty of care. In this case, I believe that the evidence before the trial court, construed most favorably to the plaintiffs, could establish a duty of care for White Castle Systems, Inc. ("White Castle") in regard to Ty Slagle. Hence, I believe that summary judgment was and is inappropriate.

Construing the evidence in a light most favorable to plaintiffs, the facts revealed in the record indicate that Ty Slagle was a minor who wished to be considered for employment at a White Castle restaurant located in a high-crime area of Columbus. Ty's parents had serious misgivings about their son working in a high-crime area in the early morning hours, so they accompanied Ty to the restaurant to discuss their concerns with the manager. The manager assured them that Ty would not be permitted to leave the restaurant during his overnight shift, so he would not be in danger from the risks associated with being present unattended in a high-crime neighborhood in the early morning hours. As a result, Ty was permitted to go to work at the restaurant.

Despite these assurances, Ty *was* permitted to leave the restaurant during the early morning hours. During his walk home, he was abducted, brutalized and sexually assaulted.

These facts establish to my satisfaction that White Castle assumed a duty of care in regard to the well-being of Ty Slagle during the early morning hours when he was located in the high-crime area surrounding the restaurant.

I do not believe that the state's workers' compensation laws provide a defense for White Castle because the injuries were not inflicted in the course of Ty's employment, although the injuries could be construed as arising out of his employment.

Therefore, as indicated above, I do not believe that summary judgment should have been granted. Since I would reverse the judgment, I respectfully dissent.